UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NEW YORK TIMES COMPANY and ROBERT JIMISON,<br><br>                              Plaintiffs,<br><br>       v.<br><br>DEPARTMENT OF THE TREASURY,<br><br>                              Defendant. | **COMPLAINT** |

Plaintiffs THE NEW YORK TIMES COMPANY and ROBERT JIMISON (together, "The Times"), by and through their undersigned attorneys, allege as follows:

1. This is an action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq*. ("FOIA"), to obtain an order for the production of agency records from the United States Department of the Treasury (the "Department") in response to a FOIA request made by The Times.

**PARTIES**

2. Plaintiff The New York Times Company publishes *The New York Times* newspaper and www.nytimes.com. The Times is headquartered in this judicial district at 620 Eighth Avenue, New York, NY, 10018.

3. Plaintiff Robert Jimison is a reporter at *The New York Times*.

4. The Department is an agency of the federal government that has possession and control of the records that The Times seeks.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

6. Venue is premised on Plaintiff The New York Times Company's place of business and is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## LEGAL FRAMEWORK

7. FOIA requires that agencies make a determination as to FOIA requests within 20 business days. 5 U.S.C. § 552(a)(6)(A)(i).

8. FOIA allows agencies to extend that 20-business-day deadline by 10 business days—for a total of 30 business days—in the event of "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). But an agency invoking the "unusual circumstances" provision must satisfy certain procedural requirements, such as providing timely written notice to the requester, explaining the unusual circumstances, and stating "the date on which a determination is expected to be dispatched." *Id.*

9. "In order to make a 'determination' within the statutory time periods . . . the agency must at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 182-83 (D.C. Cir. 2013) (Kavanaugh, J.); *see also* 5 U.S.C. § 552(a)(6)(A)(i)(I) (specifying that a determination must include "the reasons therefor").

10. FOIA provides that a requester "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with" the statutory deadlines. 5 U.S.C. § 552(a)(6)(C)(i).

11. The Department has failed to meet the statutory deadline for making a determination in response to The Times's FOIA request. *See* 5 U.S.C. § 552(a)(6)(A). The Times

is, therefore, deemed to have exhausted all available administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C) and is entitled to commence an action against the Department.

## FACTUAL BACKGROUND

### *The United States's Recent Efforts to Control Venezuelan Oil Sales*

12. On January 3, 2026, the United States carried out a military operation in Venezuela and captured Venezuelan President Nicolás Maduro. *See* Aimee Ortiz, Hannah Ziegler & Yan Zhuang, *What We Know About Maduro's Capture and the Fallout*, N.Y. Times (Jan. 6, 2026), https://www.nytimes.com/2026/01/03/world/americas/venezuela-maduro-capture-trump.html.

13. Following Mr. Maduro's capture and extradition, President Trump claimed that the United States would "run" Venezuela, including by reclaiming control of oil interests there. *Id.*

14. Additional details of these arrangements emerged in the ensuing days and weeks. On January 6, President Trump claimed that Venezuela would send between 30 and 50 million barrels of oil to the United States, and that he would control profits from the sale of that oil "to benefit the people of Venezuela and the United States." Stanley Reed and Chris Cameron, *What to Know About the Venezuelan Oil That Trump Claims the U.S. Will Receive*, N.Y. Times (Jan. 6, 2026), https://www.nytimes.com/2026/01/06/business/venezuela-oil-supply.html; *see also* Carl Hulse, *Trump's Claim to Venezuelan Oil Money Draws Scrutiny in Congress*, N.Y. Times (Jan. 7, 2026), https://www.nytimes.com/2026/01/07/us/politics/congress-trump-venezuela-oil-constitution.html ("'This Oil will be sold at its Market Price, and that money will be controlled by me, as President of the United States of America, to ensure it is used to benefit the people of Venezuela and the United States!' Mr. Trump said on social media.").

15. The next day, January 7, Trump administration officials explained that the United States intended to maintain significant control over Venezuela's oil industry—including by

3

overseeing the sale of the country's oil production "indefinitely"—and that it was "about to execute on a deal to take all the oil." Rebecca F. Elliott & Robert Jimison, *U.S. Sets Out Bare-Bones Plan to Control Venezuela's Oil Sales*, N.Y. Times (Jan. 7, 2026), https://www.nytimes.com/2026/01/07/business/energy-environment/us-venezuela-oil-control.html. As The Times reported, "[i]t was unclear what legal authority the administration would rely on to commandeer the oil money to use as it saw fit, nor was it apparent what exactly had been agreed" between the two countries. *Id.* "Even the exact status of the agreement was unclear," with administration officials giving contradictory statements about whether an agreement had been finalized. *Id.*

16. By January 14, at least some Venezuelan oil had been sold in U.S.-brokered transactions. Anatoly Kurmanaev, *U.S. Races to Sell Venezuelan Oil, Transforming Ties With Former Foe*, N.Y. Times (Jan. 14, 2026), https://www.nytimes.com/2026/01/14/world/americas/venezuela-oil-us-deal.html. Proceeds from these sales were held in a bank account in Qatar. *Id.*

### *Secretary Rubio's Congressional Testimony*

17. On January 28, Secretary of State Marco Rubio testified before the Senate Foreign Relations Committee.

18. During that testimony, Secretary Rubio explained that Venezuelan officials had agreed to an arrangement in which the United States would control the disbursement of proceeds from the sale of Venezuelan oil.

> Secretary of State Marco Rubio: [T]he money never enters our hands. We only control the disbursement of the money. We don't control the actual money in the sense of, like, it comes into our bank account.
>
> Senator Brian Schatz: Do you think that you have somewhere in the statute or the Constitution, the authority to control disbursements of a foreign country?

>Secretary Rubio: Well, they've agreed to this, and that's the key. They've agreed to this arrangement in which the sanctions that are placed on this oil is what blocks its distribution. We've agreed to release sanctions and allow the disbursement of the funding as long as they're spending it in a certain way. I understand it's novel, but it's the best we could come up with in the short term to ensure that they're [sic].

19. In response to questioning, Secretary Rubio confirmed that this agreement was reduced to writing and characterized it as a "document."

>Senator Schatz: Is there a written agreement that memorializes this?
>
>Secretary Rubio: Yes. Yes, there is and there will have to be one most certainly once we transition that to U.S. accounts.
>
>. . .
>
>Secretary Rubio: Yeah, I just didn't bring the document with me.

20. Secretary Rubio also confirmed that the agreement was in the possession of the Department.

>Senator Schatz: Secretary, my understanding is the committee doesn't have this agreement. Not sure if we do or we don't.
>
>Secretary Rubio: And you probably wouldn't, because it's a Treasury matter. Treasury's handled it, but I can most certainly talk to Treasury about providing you the information.

### The Times's FOIA Request

21. Following Secretary Rubio's testimony, The Times contacted officials at the Department to seek a copy of the agreement but did not receive a response.

22. On January 29, Mr. Jimison, on behalf of The Times, submitted a FOIA request to the Department.

23. That request sought "[t]he agreement between the United Sates and Venezuela described by Secretary of State Marco Rubio in his testimony on January 28, 2026 before the

Senate Foreign Relations Committee concerning sales of Venezuelan oil along with the management and disbursement of proceeds."

24. On February 2, the Department acknowledged receipt of the request and stated that it "ha[s] initiated a search . . . for records that would be responsive[.]" It assigned the request tracking number 2026-FOIA-00891.

25. In its response, the Department claimed that, while "[e]very effort will be made to provide you with a timely response . . . unusual circumstances exist regarding the search for and review of potentially responsive records which may delay our response." It further claimed that those circumstances "*may* include the need to consult with multiple program offices, to review a voluminous quantity of records, or to search for records stored in multiple locations" (emphasis added), even though The Times's request is narrow in scope.

26. The Times has not received any further response to this request.

## CAUSE OF ACTION (5 U.S.C. § 552)

27. The Times repeats, realleges, and reincorporates the allegations in the foregoing paragraphs as though fully set forth herein.

28. The Department is an agency subject to FOIA, and it must therefore conduct an adequate search using reasonable efforts for responsive records, release any disclosable records in its possession at the time of the request, and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

29. The Department has failed to meet the statutory deadline for making a determination in response to The Times's request. The Department's February 2, 2026 response was not a determination. In that response, the Department invoked the "unusual circumstances" provision, but failed to both (1) "set[] forth the unusual circumstances" (only stating what they

6

"may include") and (2) specify "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i). And, in any event, more than 30 business days have elapsed since the Department received the request.

30. The Times has therefore exhausted all available administrative remedies with respect to this request. 5 U.S.C. § 552(a)(6)(C)(i).

31. The Department is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

32. No exemptions permit the withholding of the records sought by this request.

33. The Times is thus entitled to an order compelling the Department to produce records responsive to this request.

## REQUEST FOR RELIEF

WHEREFORE, The Times respectfully requests that this Court:

34. Declare that the records sought by the request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

35. Order the Department to undertake an adequate search for the requested records and to provide those records to The Times within 20 business days of the Court's order;

36. Award The Times the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA, 5 U.S.C. § 552(a)(4)(E)(i); and

37. Grant The Times such other relief as this Court deems just and proper.

Dated: New York, New York
      March 16, 2026

*/s/ David E. McCraw*
David E. McCraw
Al-Amyn Sumar
Jackson Busch
Legal Department
The New York Times Company
620 Eighth Avenue
New York, NY 10018

Phone: (212) 556-4031  
Email: mccraw@nytimes.com  
al-amyn.sumar@nytimes.com  
jackson.busch@nytimes.com

*Counsel for Plaintiffs*

8